Appeal No. 2015-1427

UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT
_____

HEWLETT-PACKARD COMPANY,

Appellant

v.

MPHJ TECHNOLOGY INVESTMENTS, LLC,

Appellee

MICHELLE K. LEE, Director, U.S. Patent and Trademark Office,

Intervenor
_____

Appeal from the United States Patent and Trademark Office,
Patent Trial and Appeal Board in No. IPR2013-00309.
_____

BRIEF FOR INTERVENOR – DIRECTOR OF THE
UNITED STATES PATENT AND TRADEMARK OFFICE

THOMAS W. KRAUSE
Acting Solicitor

SCOTT C. WEIDENFELLER
Acting Deputy Solicitor

AMY J. NELSON
JOSEPH G. PICCOLO
Associate Solicitors

Office of the Solicitor
U.S. Patent and Trademark Office
Mail Stop 8, P.O. Box 1450
Alexandria, Virginia 22313
(571) 272-9035

*Attorneys for the Director of the*
*United States Patent and Trademark Office*

July 13, 2015

## RELEVANT STATUTORY PROVISIONS

35 U.S.C. § 314(d):

> **(d)  No Appeal.**—The determination by the Director whether to institute an inter partes review under this section shall be final and nonappealable.

35 U.S.C. § 316:

> **(a)  Regulations.**—The Director shall prescribe regulations—
>
> * * *
>
> (2) setting forth the standards for the showing of sufficient grounds to institute a review under section 314(a);
>
> * * *
>
> (4) establishing and governing inter partes review under this chapter . . . ;
>
> * * *
>
> (11) requiring that the final determination in an inter partes review be issued not later than 1 year after the date on which the Director notices the institution of a review under this chapter . . . ;
>
> * * *
>
> **(b)  Considerations.**—In prescribing regulations under this section, the Director shall consider the effect of any such regulation on the economy, the integrity of the patent system, the efficient administration of the Office, and the ability of the Office to timely complete proceedings instituted under this chapter.

TABLE OF CONTENTS

Page

I.    STATEMENT OF THE ISSUES ............................................................1

II.   STATEMENT OF THE CASE ...............................................................2

      A.   MPHJ's Patent..........................................................................3

      B.   The Prior Art ...........................................................................4

           1.   Cotte ..............................................................................4

           2.   SJ5 User's Guide...........................................................5

           3.   SJ5 Press Release ..........................................................5

      C.   Proceedings Before the Board.................................................6

           1.   HP's Petition for *Inter Partes* Review........................6

           2.   The Board's Institution of *Inter Partes* Review .........8

           3.   The Board's Final Written Decision...........................9

      D.   Statutory and Regulatory Background .................................10

III.  SUMMARY OF THE ARGUMENT .......................................................13

IV.   ARGUMENT....................................................................................15

      A.   Standard of Review .............................................................15

      B.   This Court Lacks Jurisdiction to Review the Board's Decision
           to Institute Inter Partes Review on Some, but Not All, of the
           Grounds Proposed by HP ....................................................16

C.    The Board Did Not Abuse Its Discretion by Instituting Inter Partes Review on Some, but Not All, of the Grounds Proposed by HP ................................................................................... 25

D.    HP Is Not Estopped From Arguing the Denied Grounds of Unpatentability in District Court ......................................................... 33

V.    CONCLUSION ................................................................................... 36

TABLE OF AUTHORITIES

**<u>Cases</u>**                                                                                    **<u>Page(s)</u>**

*Adair v. Carter*,
    668 F.3d 1334 (Fed. Cir. 2012) .......................................................................15

*Bowen v. Mich. Acad. of Family Physicians*,
    476 U.S. 667 (1986)....................................................................... 18, 19-20, 21

*Belkin Int'l, Inc. v. Kappos*,
    696 F.3d 1379 (Fed. Cir. 2012) .......................................................................22

*Califano v. Sanders*,
    430 U.S. 99 (1977)...........................................................................................19

*Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*,
    467 U.S. 837 (1984).........................................................................................16

*Cuozzo Speed Techs., LLC, In re*,
    __F.3d __, No. 2014-1301, 2015 WL 4097949
    (Fed. Cir. July 8, 2015) (panel decision) ................................................. *passim*

*Cuozzo Speed Techs., LLC, In re*,
    __F.3d __, No. 2014-1301, 2015 WL 4100060
    (Fed. Cir. July 8, 2015) (order denying rehearing en banc) .............................17

*Dominion Dealer Solutions, LLC, In re*,
    749 F.3d 1379 (Fed. Cir. 2014) .......................................................................17

*Donaldson Co., In re*
    16 F.3d 1189 (Fed. Cir. 1994) .........................................................................16

*Eli Lilly & Co. v. Board of Regents of Univ. of Wash.*,
    334 F.3d 1264 (Fed. Cir. 2003) .......................................................................26

*Garner, In re*,
    508 F.3d 1376 (Fed. Cir. 2007) .......................................................................16

**Page(s)**

*GEA Process Eng'g, Inc. v. Steuben Foods, Inc.*,
   Nos. 2015-1536, -1537, -1538, -1539, -1540 (ECF 21)
   (Fed. Cir. June 23, 2015) ...................................................................23

*GTNX, Inc. v. INTTRA, Inc.*,
   __F.3d__, Nos. 15-1349, -1350, -1352, -1353, 2015 WL 3692319
   (Fed. Cir. June 16, 2015) ............................................................. 19, 23

*Intellectual Ventures II LLC v. JPMorgan Chase & Co.*,
   781 F.3d 1372 (Fed. Cir. 2015) .................................................. 27, 34

*Katz, In re*,
   687 F.2d 450 (CCPA 1982) ...............................................................29

*Litecubes, LLC v. N. Light Prods., Inc.*,
   523 F.3d 1353 (Fed. Cir. 2008) .......................................................15

*Lovin, In re*,
   652 F.3d 1349 (Fed. Cir. 2011) .......................................................16

*McDaniel, In re*,
   293 F.3d 1379 (Fed. Cir. 2002) .......................................................28

*McNary v. Haitian Refugee Ctr., Inc.*,
   498 U.S. 479 (1991)................................................................... 21-22

*Philips Elecs. NA Corp. v. Ilumisys LLC*,
   No. IPR2014-00448 (P.T.A.B. Sep. 3, 2014) ...................................20

*Proctor & Gamble Co., In re*,
   749 F.3d 1376 (Fed. Cir. 2014) .......................................................17

*St. Jude Med., Cardiology Div., Inc. v. Volcano Corp.*,
   749 F.3d 1373 (Fed. Cir. 2014) ................................................ *passim*

*Sullivan, In re*,
   362 F.3d 1324 (Fed. Cir. 2004) ........................................... 16, 27-28

iv

**Page(s)**

*Versata Dev. Group, Inc. v. SAP Am., Inc.*,
    No. 2014-1194, 2015 WL 4113722 (Fed. Cir. July 9, 2015) ..........................18

*Watts, In re*,
    354 F.3d 1362 (Fed. Cir. 2004) .......................................................................35

**Statutes**

5 U.S.C. § 555 ..............................................................................................26

5 U.S.C. § 556 ..............................................................................................26

5 U.S.C. § 557 ..............................................................................................26

5 U.S.C. § 704 ..............................................................................................19

5 U.S.C. § 706 ...................................................................................... 16, 27

35 U.S.C. § 102 ............................................................................... 1, 6, 14, 28

35 U.S.C. § 103 .........................................................................................6, 25

35 U.S.C. § 144 ..............................................................................................35

35 U.S.C. § 311 ..............................................................................................10

35 U.S.C. § 314 .................................................................................... *passim*

35 U.S.C. § 315 ..............................................................................................34

35 U.S.C. § 316 .................................................................................... *passim*

35 U.S.C. § 318 ...................................................................................19, 23, 27

35 U.S.C. § 319 .................................................................................... 19, 23

35 U.S.C. § 325 ..............................................................................................11

**Page(s)**

35 U.S.C. § 326 ................................................................20

35 U.S.C. § 328 ................................................................23

35 U.S.C. § 329 ................................................................23

Leahy-Smith America Invents Act,
   Pub. L. No. 112-29, 125 Stat. 284 (2011)................................. *passim*

**Rules**

37 C.F.R. § 42.1 ............................................. 20, 32

37 C.F.R. § 42.71 .................................................9, 32

37 C.F.R. § 42.108 ............................................... *passim*

**Other Authorities**

157 Cong. Rec. S1377 (daily ed. Mar. 8, 2011) ........................... 13, 33

Changes to Implement Inter Partes Review Proceedings,
   77 Fed. Reg. 48680 (Aug. 14, 2012) ............................... 12, 27, 32, 34

MPEP § 2141 .................................................8, 30

Office Patent Trial Practice Guide,
   77 Fed. Reg. 48756 (Aug. 14, 2012) ..................................12

## STATEMENT OF RELATED CASES

The Director is not aware of any other appeal from the Patent Trial and Appeal Board ("Board") of the United States Patent and Trademark Office in connection with U.S. Patent No. 6,771,381 that has previously been before this Court. The Director is aware of a district court appeal involving the patent, *Vermont v. MPHJ Tech. Investments, LLC*, No. 2015-1310, which is currently pending before this Court. That case pertains to a suit brought by the State of Vermont, asserting that MPHJ Technology Investments, LLC ("MPHJ") violated the Vermont Consumer Protection Act by sending infringement letters with respect to several of its patents, including U.S. Patent No. 6,771,381. MPHJ appealed from a remand order by the district court following removal from state court. Briefing is now complete, and argument has been scheduled for August 4, 2015.

After an earlier district court remand order, MPHJ petitioned for a writ of mandamus, *Vermont v. MPHJ Tech. Investments, LLC*, No. 2014-137, and appealed, *Vermont v. MPHJ Tech. Investments, LLC*, No. 2014-1481. On August 11, 2014, this Court dismissed the petition and appeal for lack of jurisdiction. *Vermont v. MPHJ Tech. Investments, LLC*, 763 F.3d 1350 (Fed. Cir. 2014).

In addition, this Court's decisions in *Synopsys, Inc. v. Mentor Graphics Corp.*, No. 2014-1516, - 1530 (pending), *Schott Gemtron Corp. v. SSW Holding*

*Co.*, No. 2015-1073 (pending), *Shaw Indus. Group, Inc. v. Automated Creel Sys..
Inc.*, No. 2015-1116, - 1119 (pending), *Harmonic, Inc. v. Avid Tech., Inc.*, No.
2015-1072 (pending),  *Nuvasive, Inc. v. Warsaw Orthopedic, Inc.*, Nos. 2015-
1049, -1050, -1058 (pending), and *SAS Inst., Inc. v. ComplementSoft, LLC,* No.
2015-1346 (pending) may directly affect, or be directly affected by, this Court's
decision in this appeal because they also involve the reviewability of a Board
decision not to institute *inter partes* review on some grounds.

 The Director is unaware of any other case pending in this or any other court
that will directly affect, or directly be affected by, the Court's decision in this
appeal.

# I.    STATEMENT OF THE ISSUES

MPHJ's patent is directed to a "virtual copier"—i.e., a data management system that permits scanning of an image at one device and copying or printing at another device.  Disputed claim 13 requires, *inter alia*, that the system "maintain [a] list of available module means" (e.g., input, output, and process modules used in the system), which the system reads at startup.

Hewlett-Packard Co. ("HP") petitioned for *inter partes* review of MPHJ's patent on eight different grounds involving seven different prior art references. The Board instituted review of all claims as anticipated under 35 U.S.C. § 102(b) by either (1) the SJ5 User's Guide, a detailed document describing one of HP's scanners, or (2) Cotte.  The Board denied review on the remaining grounds: anticipation under 35 U.S.C. § 102(a) or (e) by various publications, and obviousness over the combination of the SJ5 User's Guide and a brief SJ5 Press Release pertaining to the same scanner.

Following *inter partes* review, the Board issued a final decision finding claims 1-12, 14, and 15 (i.e., all claims except claim 13) to be unpatentable as anticipated by Cotte.  Given its anticipation findings based on Cotte, the Board did not reach whether the SJ5 User's Guide anticipates those claims.  With respect to claim 13, the Board found that HP failed to show by a preponderance

of the evidence that the claim is anticipated by either Cotte or the SJ5 User's Guide.

HP challenges both the Board's final written decision finding claim 13 not to be anticipated by Cotte and its decision not to institute review of claim 13 on the obviousness ground set forth in the petition.  The Director intervened solely to address HP's challenge to the Board's institution decision.  With respect to that decision, the issues on appeal are:

(1) whether this Court lacks jurisdiction to review the Board's decision to institute on some, but not all, grounds in the petition given the clear mandate in 35 U.S.C. § 314(d) that such decisions are "final and nonappealable"; and

(2) if this Court decides that it has jurisdiction to review the Board's institution decision, whether the Board abused its discretion in declining to institute review on the obviousness ground HP proposed in its petition.

## II.    STATEMENT OF THE CASE

This appeal arises from *inter partes* review of U.S. Patent No. 6,771,381 ("the '381 patent"), entitled "Distributed Computer Architecture and Process for Virtual Copying."  A157-245.[1]  The Board instituted review of all claims (claims 1-15) of the patent on two grounds proposed by HP, but declined to institute

---

[1] Citations to the Joint Appendix are denoted as "A__."  Citations to HP's Brief are denoted as "Br. at __."

2

review on multiple alternative proposed grounds.  A1-40.  Following *inter partes*

review, the Board issued a final written decision finding claims 1-12, 14, and 15

to be unpatentable over the prior art.  A41-88.  However, the Board found that HP

did not show by a preponderance of the evidence that claim 13 is unpatentable.

A85-87.  HP appealed the Board's institution decision and final written decision

to this Court.

## A.    MPHJ's Patent

The '381 patent discloses a virtual copier ("VC"), which permits paper to

be scanned at one device and copied to a device at another location.  A157

(abstract).  In essence, the VC is "software that manages paper so that it can be

electronically and seamlessly copied in and out of devices and business

applications (such as Microsoft Office, Microsoft Exchange, Lotus Notes) with an

optional single-step Go operation."  *Id*.; A203 (col. 3, ll. 29-33).  "The VC

software can reside on a PC, LAN/WAN server, digital device (such as a digital

copier), or on a web server to be accessed over the Internet."  A157 (abstract).

The VC comprises five essential modules, which are counterparts to devices on a

conventional copier: input module (scanner subsystem); output module (printer or

fax subsystem); process module (controller); client module (panel); and server

module.  A237 (col. 71, l. 66 – col. 72, l. 60).

3

Disputed claim 13 recites:

> 13.    A computer data management system including a server module comprising:
>
> [1] enable virtual copy operation means for initiating, canceling, and resetting said computer data management system;
>
> [2] maintain *list of available module means* for maintaining a registry containing a list of said input, output, and process modules that can be used in said computer data management system, said list being read on startup, and maintaining another copy of said list in a modules object accessible by said input, output, client, process and server modules;
>
> [3] maintain currently active modules means for maintaining said input, output, and process modules currently being used for a current computer data management system copy operation in a program object, and saving the currently active modules in a process template file; and
>
> [4] maintain complete document information means for maintaining information regarding a current file being copied, and saving the information in a document template file.

A245 (disputed limitation emphasized; bracketed numbers added).

## B.    The Prior Art

### 1.    Cotte[2]

Cotte discloses an integrated system comprising a "document-driven scanning input device communicating with a computer."  A2157 (title; abstract). The input device scans images and the scanned data can be sent to the host computer "for further electronic processing, such as display, transmission, storage or modification."  A2174 (col. 2, ll. 41-48); A2157 (abstract).  The scanned

_____

[2] U.S. Patent No. 5,499,108.  A2157-2190.

images can then be e-mailed, faxed or printed.  A2178 (col. 10, ll. 42-58); A2157 (abstract); A2161 (fig. 10).  Cotte describes the invention as "a paper input device using scanning technology which controls the host computer rather than the other way around, the latter being what is taught in the prior art."  A2174 (col. 2, ll. 48-52).

### 2.    SJ5 User's Guide[3]

The HP ScanJet 5 Scanner User's Guide ("SJ5 User's Guide") is a 140-page guidance document explaining use of HP's ScanJet 5 Scanner.  A1426-1565.  It provides detailed guidance on installing, using, and troubleshooting problems with the scanner.  A1432-35.  In the Getting Started section, it indicates that the scanner is compatible with and supports Microsoft Windows operating systems, including Windows 3.1, Windows 95, Windows NT 3.51, and Windows NT 4.0.  A1437-38.

### 3.    SJ5 Press Release[4]

The HP ScanJet 5 Press Release ("SJ5 Press Release") is a 6-page document announcing HP's release of the ScanJet5 scanner.  A2213-18.  It briefly

---

[3] Hewlett Packard, HP Network ScanJet 5 Scanner User's Guide.  A1426-1565.

[4] Hewlett Packard, New Product Information:  HP Introduces Next-Generation Network Scanner.  A2213-18.

summarizes the key features and usefulness of the scanner, as well as pricing and

availability.  *Id*.  The Press Release also notes that the scanner supports Microsoft

Windows 3.1, Windows 95, and Windows NT 3.51, Windows NT 4.0.  A2215;

A2217.

**C.    Proceedings Before the Board**

**1.    HP's Petition for *Inter Partes* Review**

HP filed a petition for *inter partes* review, proposing eight grounds of

unpatentability.  A93-155.  First, HP asserted that all claims (claims 1-15) of the

'381 patent are anticipated under 35 U.S.C. § 102(b) by either Cotte or the SJ5

User's Guide.  A94; A103-110; A139-147.  HP also asserted that claims 1-15 are

anticipated under 35 U.S.C. § 102(a) by three additional references and under

§ 102(e) by a fourth reference.  A94; A110-139.  Finally, HP asserted that certain

claims are anticipated under 35 U.S.C. § 102(b) by the SJ5 Press Release, and the

remaining claims (including claim 13) are rendered obvious under 35 U.S.C.

§ 103 by the SJ5 Press Release in view of the SJ5 User's Guide.  A94; A147-155.

Regarding the phrase "list of available module means" in claim 13

(element 13.2), HP asserted that Cotte anticipates the limitation by its disclosure

of "generating a menu of options by referencing a hard disk (used at startup of a

copier) and RAM (used during operation of a copier) to 'determine what software

packages are resident.'"  A143 [9.2] (incorporated by reference at A145-46

6

[13.2]).  HP submitted a declaration by Mark Wibbels, a technologist at HP, to support its assertion.  A1298-1299.  Mr. Wibbels stated essentially what was alleged in the petition.  A1405 (¶ 308) (incorporated by reference at A1408 (¶ 320)).

HP asserted that the SJ5 User's Guide anticipates the limitation because it "maintains lists of destinations and workflows, and is started automatically when Windows is started."  A106 (incorporated by reference at A109).  Mr. Wibbels further declared:

> The troubleshooting section includes numerous references to how missing links should be fixed, e.g., fixing missing email links by checking and reinstalling .ini and other files, by ensuring paths and key entries exist, and by reinstalling software files if the appropriate components are no longer found.  One skilled in the art in 1998 would recognize from this description that a list of active processes and programs would be stored in a registry of the system.

A1357 (¶ 132) (incorporated by reference at A1361 (¶ 146)).

With respect to the proposed obviousness rejection over the SJ5 Press Release in view of the SJ5 User's Guide, HP contended that SJ5 Press Release meets element 13.2 by its disclosure of "operating system support including Microsoft Windows and communications among devices and applications using standard Windows facilities."  A152 [9.2] (incorporated by reference at A154 [13.2]).  Regarding the obviousness of element 13.1, HP simply stated, without more, that combining elements "would have been merely a 'simple substitution of

7

one known element for another to obtain predictable results,' and '[a]pplying a known technique to a known device (method, or product) ready for improvement to yield predictable results.'" A151 [0.0] (citing MPEP § 2141 III.(D)) (incorporated by reference at A152 [9.1], which is in turn incorporated by reference at A154 [13.1]).

### 2.    The Board's Institution of *Inter Partes* Review

The Board found that HP demonstrated a reasonable likelihood of prevailing on the ground that Cotte anticipates claims 1-15. A21-33. Regarding the limitation "list of available module means" in claim 13 (element 13.2), the Board credited the evidence cited in HP's petition and the Wibbels declaration. A30.

The Board also found that HP established a reasonable likelihood of prevailing on the ground that the SJ5 User's Guide anticipates claims 1-15. A33-38. With respect to the limitation in claim 13, the Board again credited HP's assertions in the petition and the Wibbels declaration. A37.

The Board denied *inter partes* review based on the six alternative proposed grounds "as redundant in light of the determination that there is a reasonable likelihood that the challenged claims are unpatentable based on the grounds of unpatentability on which we institute an *inter partes* review." A38.

8

HP did not request rehearing on the Board's institution decision, as permitted under 37 C.F.R. § 42.71.

### 3.    The Board's Final Written Decision

During the *inter partes* review, the Board issued a final written decision finding that Cotte anticipates claims 1-12, 14, and 15.  A41-88.  With respect to claim 13, however, the Board found that HP failed to show by a preponderance of the evidence that Cotte anticipates.  A85.  Specifically, the Board found that HP did not demonstrate that Cotte meets the "list of available module means" limitation.  *Id*.  According to the Board, although HP asserted that Cotte discloses a list of menu options used at startup, it "d[id] not point out the specific list or show it is read on start-up."  *Id*.  Moreover, the Board observed that "Mr. Wibbels appears to rely on inherency 'in a Windows implementation,' but fails to "provide a citation or persuasive evidence that shows that Cotte employs a Windows implementation."  *Id*.

Given its finding that Cotte anticipates claims 1-12, 14, and 15, the Board determined that it was unnecessary to reach whether the SJ5 User's Guide anticipates those claims.  A86.  Regarding claim 13, the Board observed that HP failed to respond to MPHJ's argument that the SJ5 User's Guide does not meet the limitation "list of available module means."  *Id*.  The Board also noted that, during oral hearing, HP "was unable to specify the relevant names for the process

9

or server modules appearing in a list or lists recited." A87. Turning to HP's petition, the Board observed that in addressing claim 13, the petition generally refers to its analysis of claims 1, 2, and 7, which do not recite a list of modules. *Id.* Because HP did not specify how the SJ5 User's Guide meets the "list of available module means" limitation, the Board found that HP did not show by a preponderance of the evidence that the SJ5 User's Guide anticipates claim 13. *Id.*

## D.    Statutory and Regulatory Background

In the Leahy-Smith America Invents Act ("AIA"), Pub. L. No. 112-29, 125 Stat. 284 (2011), Congress substantially expanded the authority of the United States Patent and Trademark Office ("USPTO") to reconsider the patentability of claims in issued patents. The AIA replaced *inter partes* reexamination with *inter partes* review, an adversarial proceeding before the renamed Patent Trial and Appeal Board. *See* 35 U.S.C. § 311. The AIA also changed the threshold showing necessary for the USPTO to institute an *inter partes* proceeding, made all patents subject to such review regardless of the date on which they were issued, and imposed strict timelines for completion of the review. *See id*. §§ 311(a), (c), 314(a), 316(a)(11). Notably, Congress expressly made clear that the "determination by the Director whether to institute an *inter partes* review" is "final and nonappealable," *id*. § 314(d), and that *inter partes* reviews must be completed within one year, *id*. § 316(a)(11).

10

To implement the AIA's new administrative review schemes, Congress provided the USPTO with expanded rulemaking authority. *See generally id*. § 316(a). Specifically, the AIA gives the USPTO broad authority to "prescribe regulations" for "establishing and governing inter partes review," *id*. § 316(a)(4), and for "setting forth the standards for the showing of sufficient grounds to institute a review under 314(a)," *id*. § 316(a)(2). The AIA also requires the Director to "consider the effect of any such regulation on the economy, the integrity of the patent system, the efficient administration of the Office, and the ability of the Office to timely complete proceedings[.]" *Id*. § 316(b). The AIA gives the USPTO discretion to deny a petition in the event that substantially the same grounds of unpatentability have been previously proposed. *See id*. § 325(d) ("In determining whether to institute or order a proceeding under this chapter, chapter 30, or chapter 31, the Director may take into account whether, and reject the petition or request because, the same or substantially the same prior art or arguments previously were presented to the Office.").

Pursuant to those express statutory grants of rulemaking authority, the USPTO has prescribed regulations governing *inter partes* review proceedings, as well as general rules of practice before the Board. *See generally* 37 C.F.R., part 42. Consistent with the efficiency concerns contemplated by the AIA provisions, the Agency implemented a regulatory scheme that should "be construed to secure

11

the just, speedy, and inexpensive resolution of every proceeding." *Id*. § 42.1(b).

Significantly, regarding *inter partes* review, one regulation states that "[w]hen

instituting *inter partes* review, the Board may authorize the review to proceed on

all or some of the challenged claims and on all or some of the grounds of

unpatentability asserted for each claim." *Id*. § 42.108(a).  The rule further

explains that "[a]t any time prior to institution of *inter partes* review, the Board

may deny some or all grounds for unpatentability for some or all of the

challenged claims" and that a "[d]enial of a ground is a Board decision not to

institute *inter partes* review on that ground."  *Id*. § 42.108(b).

The Board's Trial Practice Guide—published when the final rules were

published—explains that "the Board will streamline the issues for final decision

by authorizing the trial to proceed only on the challenged claims" and "[a]ny

claim or issue not included in the authorization for review is not part of the trial."

Office Patent Trial Practice Guide, 77 Fed. Reg. 48756, 48765 (Aug. 14, 2012).

The USPTO's explanatory guidance accompanying the rules states that rule

42.108(b) "is consistent with the efficient administration of the Office, which is a

consideration in prescribing *inter partes* review regulations under 35 U.S.C.

§ 316(b)[.]"  Changes to Implement Inter Partes Review Proceedings, Post-Grant

Review Proceedings, and Transitional Program for Covered Business Method

Patents, 77 Fed. Reg. 48680, 48689 (Aug. 14, 2012).  The AIA legislative history

confirms that Congress intended to achieve such efficiency by giving the Director discretion in determining whether to deny institution, even for otherwise meritorious petitions. *See* 157 Cong. Rec. S1377 (daily ed. Mar. 8, 2011) (statement by Senator Kyl) (explaining that the requirement in 35 U.S.C. § 316(b) that the USPTO take into account its ability to timely complete proceedings "reflects a legislative judgment that it is better that the [USPTO] turn away some petitions that otherwise satisfy the threshold for instituting an inter partes … review than it is to allow the [USPTO] to develop a backlog of instituted reviews that precludes the [USPTO] from timely completing all proceedings").

## III.    SUMMARY OF THE ARGUMENT

When Congress established *inter partes* review under the AIA, it made clear that a decision by the Board instituting review is "final and ***nonappealable***." 35 U.S.C. § 314(d) (emphasis added).  In accordance with that clear Congressional mandate, this Court has concluded that it lacks jurisdiction to review, either on appeal or by writ of mandamus, a decision by the Board instituting or declining to institute review.  Despite the statute and this Court's precedent, HP challenges the Board's decision to institute on certain grounds while declining to institute on other grounds proposed by HP in its petition.  The law is settled:  this Court lacks jurisdiction to review the Board's decision.

13

But, even if the Court decides that it has jurisdiction to review the Board's institution decision, the Court need not disturb that decision. The Board did not abuse its discretion in selecting two grounds for review and declining to review on the other six grounds, including the obviousness ground, proposed by HP in the petition. Congress gave the Board discretion to establish procedures for *inter partes* review in a manner promoting the overall speed and efficiency of the proceedings. The Board's decision to limit the issues on review in this case was consistent with those goals and with USPTO regulations. Moreover, the Board reasonably chose to institute review based on prior art under 35 U.S.C. § 102(b) constituting a statutory bar rather than on other anticipatory prior art grounds. And, the Board reasonably declined to institute review on the proposed obviousness ground based on the SJ5 User's Guide (on which it ***did*** institute review on anticipation grounds) in combination with an abbreviated Press Release describing the very same product.

In its final written decision, the Board found that neither Cotte nor the SJ5 User's Guide anticipated claim 13 because the limitation "list of available module means" (in element 13.2) was not disclosed in either reference. Therefore, HP's assertion that the Board abused its discretion by failing to consider evidence in its petition pertaining to the obviousness of element 13.1 is misplaced. The Board's non-anticipation findings did not rest on a failure of the prior art to meet element

14

13.1; thus, there was no error by the Board in declining to consider the obviousness of element 13.1.

With respect to element 13.2, HP did not provide a detailed explanation in its petition for why it would have been obvious to combine the SJ5 User's Guide and the SJ5 Press Release to arrive at that feature. Indeed, HP asserted that each of the references independently met the limitation, which is unsurprising since the two references describe the very same scanner. Although HP now points to the discussion in the SJ5 Press Release that the scanner interfaces with and supports Microsoft Windows 3.1, Windows 95, Windows NT 3.51, and Windows 4.0, those features are also described in the SJ5 User's Guide. Therefore, the Board's decision to decline to institute review of claim 13 on the obviousness ground proposed in HP's petition was not an abuse of discretion warranting remand by this Court.

## IV.    ARGUMENT

### A.    Standard of Review

This Court reviews its own jurisdiction de novo. *Litecubes, LLC v. N. Light Prods., Inc.*, 523 F.3d 1353, 1360 (Fed. Cir. 2008). Statutory interpretation is a question of law that this Court reviews de novo. *Adair v. Carter*, 668 F.3d 1334, 1336 (Fed. Cir. 2012). "When statutory interpretation is at issue, the plain and unambiguous meaning of a statute prevails in the absence of clearly

expressed legislative intent to the contrary." *In re Donaldson Co.*, 16 F.3d 1189, 1192-93 (Fed. Cir. 1994) (en banc).

Regulations issued by the USPTO under a statutory grant of rulemaking authority are entitled to deference unless based on an unreasonable construction of the statute. *See Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-845 (1984); *see also In re Cuozzo Speed Techs., LLC,* __F.3d__, No. 2014-1301, 2015 WL 4097949, at *7 (Fed. Cir. July 8, 2015). The USPTO's "interpretation of its own regulations is entitled to 'substantial deference' unless the interpretation is 'plainly erroneous or inconsistent with the regulation.'" *In re Lovin*, 652 F.3d 1349, 1353 (Fed. Cir. 2011) (quoting *In re Garner*, 508 F.3d 1376, 1378 (Fed. Cir. 2007)).

The Board's actions may not be set aside unless "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]" *In re Sullivan*, 362 F.3d 1324, 1326 (Fed. Cir. 2004); 5 U.S.C. § 706(2)(A).

**B.    This Court Lacks Jurisdiction to Review the Board's Decision to Institute *Inter Partes* Review on Some, but Not All, of the Grounds Proposed by HP**

HP seeks to appeal the Board's decision not to institute *inter partes* review on one of the grounds HP proposed in its petition. Specifically, HP decries the Board's failure to institute review of claim 13 as obvious over the SJ5 Press Release in view of the SJ5 User's Guide. Br. at 3, 7, 12-13, 21, 28-30. But, the

statutory language is clear:  "The determination . . . whether to institute an inter

partes review . . . shall be final and ***nonappealable***."  35 U.S.C. § 314(d)

(emphasis added).  Therefore, this Court lacks jurisdiction to review the Board's

institution decision.  Indeed, this Court has held that section 314(d) prohibits

review of a decision to institute *inter partes* review.  *Cuozzo*, 2015 WL 4097949,

at *3 ("We conclude that § 314(d) prohibits review of the decision to institute IPR

even after a final decision.");[5] *see also In re Proctor & Gamble Co.*, 749 F.3d

1376, 1377 (Fed. Cir. 2014) (mandamus review of decision instituting *inter*

*partes* review unavailable).  And, this Court has determined that the statute

precludes review of a decision denying institution of *inter partes* review.  *St. Jude*

*Med., Cardiology Div., Inc. v. Volcano Corp.*, 749 F.3d 1373, 1375 (Fed. Cir.

2014) ("We hold that we may not hear St. Jude's appeal from the Director's

denial of the petition for *inter partes* review."); *see also In re Dominion Dealer*

*Solutions, LLC*, 749 F.3d 1379, 1381 (Fed. Cir. 2014) (mandamus review of non-

institution decision unavailable).  A decision instituting review on some grounds

while denying review on other grounds is similarly non-appealable.  While HP

invites the Court to distinguish from the prior cases on legal or factual grounds

---

[5] Although a petition for en banc review was pending before the Court at
the time HP filed its brief (Br. at 26), that petition has since been denied.  *In re*
*Cuozzo Speed Techs., LLC*, No. 2014-1301, 2015 WL 4100060 (Fed. Cir. July 8,
2015).

17

(Br. at 26), there is simply no basis to distinguish. The prior cases all involved this Court's jurisdiction to review a decision by the Board on whether to institute an *inter partes* review.[6]

HP contends that, under the Administrative Procedure Act ("APA"), there is a strong presumption in favor of judicial review of administrative actions, and therefore section 314(d) should be read narrowly. Br. at 22-23 (citing 5 U.S.C. § 704 and *Bowen v. Mich. Acad. of Family Physicians*, 476 U.S. 667, 670 (1986)). According to HP, section 314(d) precludes review only of the Board's threshold determination whether to institute review under "this section," and thus is limited to whether the petitioner established that it is reasonably likely to prevail on at least one ground per § 314(a), but does not preclude review of the Board's denial of some grounds as "redundant" over other grounds. Br. at 23-27.

---

[6] The Court's recent decision in *Versata Dev. Group, Inc. v. SAP Am., Inc.*, __ F.3d__, No. 2014-1194, 2015 WL 4113722 (Fed. Cir. July 9, 2015), is not to the contrary. As an initial matter, the government disagrees with the Court's decision in that case and notes that the time to seek en banc review has not yet run. More significantly, the *Versata* court held only that upon review of the Board's final written decision on a covered business method ("CBM") patent, the court could consider whether the Board had authority to institute CBM review at all. *Id.* at *10 (defining the issue as whether judicial review with regard to the final written decision permits review of "the ultimate authority of the PTAB to invalidate a patent"). Here, in contrast, there is no question that the Board did not exceed its authority where it did ***not*** institute *inter partes* review on HP's proposed obviousness ground.

18

First, it bears noting that the APA does not independently confer jurisdiction on this Court. *GTNX, Inc. v. INTTRA, Inc.*, __F.3d__, Nos. 2015-1349, -1350, -1352, -1353, 2015 WL 3692319, at *4 (Fed. Cir. June 16, 2015); *Califano v. Sanders*, 430 U.S. 99, 105-07 (1977). Moreover, HP overstates the scope of judicial review under the APA, which is limited to a "***final*** agency action." 5 U.S.C. § 704. The Supreme Court in *Bowen* stated only that "our cases have established that judicial review of a ***final*** agency action … will not be cut off ***unless there is persuasive reason to believe that such was the purpose of Congress.***" *Bowen*, 476 U.S. at 670 (internal quotation marks omitted; emphases added). Here, the Board's institution decision did not constitute a ***final*** agency action, but a preliminary determination of whether *inter partes* review is warranted.[7] Furthermore, Congress expressly revealed its intention that there be no judicial review of an institution decision in § 314(d). As the Court in *Bowen* explained, "[t]he presumption of judicial review is, after all, just a presumption, and like all presumptions used in interpreting statutes, may be overcome by, *inter alia*, ***specific language*** or specific legislative history that is a reliable indicator of congressional intent." *Bowen*, 476 U.S. at 673 (internal quotation marks omitted;

---

[7] Once the Board issues its final written decision with respect to patentability under 35 U.S.C. § 318(a), as it did here, that decision is reviewable by this Court. 35 U.S.C. § 319.

19

emphasis added). Here, any presumption is overcome by the specific statutory language that evidences Congress's intent to preclude judicial review of institution decisions.

Second, the Board's characterization of the grounds on which it did not institute as "redundant" does not render the Board's refusal to institute on some, but not all, proposed grounds to be reviewable. The use of the term "redundant" was simply short-hand for its decision to select some grounds for review for efficiency reasons, consistent with the objectives under the AIA to streamline *inter partes* review proceedings.[8] *See* 37 C.F.R. § 42.1(b); *see also* 35 U.S.C. § 316(b) (AIA post-grant proceedings must take into account "the efficient administration of the Office" and "the ability of the Office to timely complete [instituted] proceedings."); *id*. § 326(b) (same). Every institution decision is a determination on potentially many different patent claims and many different prior art references or combinations of prior art. Thus, an institution determination may be a decision to institute on all proposed grounds, a decision not to institute on any of the proposed grounds, or a decision to institute on fewer

---

[8] *See, e.g.*, *Philips Elecs. N. Am. Corp. v. Ilumisys LLC*, No. IPR2014-00448, Paper 8 at 19 (P.T.A.B. Sep. 3, 2014) ("[I]n light of the determination that there is a reasonable likelihood that those same challenged claims are unpatentable based on the grounds of unpatentability on which we institute an *inter partes* review, we exercise our discretion and do not institute a review based on these other asserted grounds for reasons of administrative efficiency.").

than all of the proposed grounds; the Board has discretion to institute on any or all

grounds in the petition.  37 C.F.R. § 42.108.  Each such decision is

"nonappealable."  35 U.S.C. § 314(d).  Just as a decision denying institution on

all grounds is beyond challenge, *St. Jude*, 749 F.3d at 1375, and a decision

granting institution on all grounds is also beyond challenge, *Cuozzo*, 2015 WL

4097949, at *3, a split decision, as here, is likewise beyond challenge.

While HP points to *Cuozzo* (Br. at 23, 27-28) as acknowledging that

mandamus review of an institution decision may be available where the PTO has

"clearly and indisputably exceeded its authority," *Cuozzo*, 2015 WL 4097949, at

*4, this is not such a case.  In *Cuozzo*, the Court was addressing a hypothetical

situation in which the Board instituted an *inter partes* review based on a prior

public use "in direct contravention of the statute."  *Id*.  That is a far cry from what

the Board did here, which was simply select certain grounds proposed by HP to

institute review.  HP's reliance on *Bowen* and *McNary v. Haitian Refugee Ctr.,*

*Inc.*, 498 U.S. 479 (1991), to support its position that the Board is not insulated

from review (Br. at 22-23, 27), is similarly misplaced.  In *Bowen*, the Supreme

Court held that legislative history evidencing that Congress intended to foreclose

review of benefit amount determinations for Medicare recipients, did not

foreclose "substantial statutory and constitutional challenges" to administration of

the Medicare program.  476 U.S. at 680.  In *McNary*, the Court held that a

21

statutory provision that barred judicial review of individual legal status

determinations did not foreclose a general challenge to unconstitutional practices

by the Immigration and Naturalization Service.  498 U.S. at 491-92.  Here, in

contrast, the statutory language of § 314(d) clearly reflects Congress's intent to

preclude review of institution decisions, which is exactly what HP is challenging.

The mere fact that HP combined eight proposed grounds into its petition

does not make the denial of any of those proposed grounds reviewable.  If a

petition had proposed only that single obviousness ground, and that petition had

been denied, there would be no question that such a decision would be

nonappealable.  *See* 35 U.S.C. § 314(d); *St. Jude*, 749 F.3d at 1375.  HP does not

get to have denial of one of its proposed grounds reviewed simply because other

grounds were instituted in the *inter partes* review.  *Cf. Belkin Int'l, Inc. v.*

*Kappos*, 696 F.3d 1379, 1382-84 (Fed. Cir. 2012) (holding that the Board did not

have jurisdiction to review the initial determination not to initiate reexamination

on all of the grounds proffered by the requester because that determination is

statutorily nonappealable).  Such a practice would permit circumvention of

section 314(d)'s prohibition against review of decisions that institute or deny an

*inter partes* review.

At bottom, HP is arguing that the Board should have instituted review on

all of the grounds presented in its petition.  Br. at 31-32.  But that argument is

simply a challenge to the Board's institution decision, which this Court cannot review.  35 U.S.C. § 314(d); *see Cuozzo*, 2015 WL 4097949, at *3; *St. Jude*, 749 F.3d at 1375.   Only the Board's "final written decision with respect to patentability" is reviewable.  *See GTNX, Inc. v. INTTRA, Inc.*, __F.3d__, Nos. 2015-1349, -1350, -1352, -1353, 2015 WL 3692319, at *2-3 (Fed. Cir. June 16, 2015) (holding that a final written decision with respect to patentability is "the only appealable decision within the statutory regime" under 35 U.S.C. §§ 328-29, which are substantively identical to §§ 318-19); *GEA Process Eng'g, Inc. v. Steuben Foods, Inc.*, Nos. 2015-1536, -1537, -1538, -1539, -1540, slip op. at 4 (ECF 21) (Fed. Cir. June 23, 2015) (non-precedential) (explaining that the *GTNX* "analysis is the same" in the IPR context).

Contrary to HP's argument (Br. at 32), the Board *can* pick and choose the grounds for institution of review.  Section 314 only mandates when the USPTO *cannot* institute review; it does not require the USPTO to institute review under any circumstances.  35 U.S.C. § 314(a) (providing that "[t]he Director *may not* authorize an inter partes review to be instituted unless the Director determines," based on the information in the petition and response, "that there is a reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims") (emphasis added).  And, the regulations expressly authorize the Board to institute review on some grounds and deny on other grounds.  37 C.F.R.

§ 42.108(a) ("[T]he Board may authorize the review to proceed … on **all or some of the grounds of unpatentability** asserted for each claim.") (emphasis added); *id*. § 42.108(b) ("[T]he Board may deny **some or all grounds for unpatentability** for some or all of the challenged claims.") (emphasis added).

HP contends that the Board lacks discretion to deny proposed grounds based on workload rather than substance.  Br. at 38-39.  But, as discussed above, the Board's ability to institute on some grounds and not others is wholly consistent with the goals of the two-step approach to *inter partes* review, to achieve the speed and efficiency promised by the AIA.  Those objectives could not be satisfied if the Board lacked the discretion to review a patent on some grounds, while declining to review on other grounds.  Moreover, the Board's denial on certain grounds was not based simply on efficiency, but also on the absence of any meaningful distinction between the different grounds.

Finally, HP argues that the speed and efficiency goals of the AIA are best managed by review on all grounds in the petition in order to achieve a complete resolution of the issues, not by piecemeal adjudication.  Br. at 32-36.  First, it is difficult to understand how requiring the Board to institute review on multiple grounds that do not significantly differ aids the overall efficiency of the Board.  To effectively manage its AIA docket, the Board must have the discretion to limit the scale of each individual proceeding.  Second, even with respect to an

24

individual proceeding, the Board can reduce the time it needs to spend on the *inter partes* review by selecting only some grounds for review.  In this proceeding, the Board did effectively and efficiently dispose of most of the claims in the patent (claims 1-12, 14, and 15), finding them to be anticipated by one of the prior art references cited in HP's petition.  And, HP can still litigate the obviousness of claim 13, on a more fully developed record, in district court or in another IPR.

Accordingly, this Court lacks jurisdiction to review the Board's decision denying institution of review of claim 13 of the '381 patent as obvious under 35 U.S.C. § 103 over the combination of the SJ5 Press Release and the SJ5 User's Guide.

**C.    The Board Did Not Abuse Its Discretion by Instituting *Inter Partes* Review on Some, but Not All, of the Grounds Proposed by HP**

As explained above, the Board's decision to deny institution on a subset of HP's proposed grounds is not appealable, and thus this Court lacks jurisdiction to review that decision.  *See* 35 U.S.C. § 314(d); *Cuozzo,* 2015 WL 4097949, at *3 ("We conclude that § 314(d) prohibits review of the decision to institute IPR even after a final decision.").  However, even if the Court were to review the Board's decision to deny institution of an *inter partes* review on some of HP's proposed grounds, the Court should find that the Board did not abuse its discretion when it

denied institution on those grounds.  An abuse of discretion occurs "if the decision (1) is clearly unreasonable, arbitrary, or fanciful; (2) is based on an erroneous conclusion of law; (3) rests on clearly erroneous fact findings; or (4) involves a record that contains no evidence on which the Board could rationally base its decision."  *Eli Lilly & Co. v. Bd. of Regents of Univ. of Wash.*, 334 F.3d 1264, 1266-67 (Fed. Cir. 2003).

HP devotes a significant portion of its brief arguing that an inter partes review constitutes a formal adjudicatory proceeding under 5 U.S.C. §§ 556 and 557 of the APA and therefore the Board was required to hold a hearing and issue a final written decision addressing all grounds in the petition.  Br. at 40-52. Alternatively, HP urges that the Board was at least required to comply with the requirements for an informal adjudicatory proceeding under § 555 of the APA— to provide a brief statement of the grounds for denial.  Br. at 52-55.

The problem with HP's position is that at the time the Board issued its institution decision, there was no *inter partes* proceeding.  That is, an adjudicatory proceeding, whether formal or informal, had not yet begun.  Only once the Board instituted review on some of HP's proposed grounds was there a proceeding that arguably required a hearing and final written decision—and the Board complied with those requirements.  *See* 35 U.S.C. § 314 (entitled "Institution of inter partes review"); *id*. § 314(b) (giving the Director authority to

26

"determine whether to institute an inter partes review"); *cf. Intellectual Ventures II LLC v. JPMorgan Chase & Co.*, 781 F.3d 1372, 1375-77 (Fed. Cir. 2015) (concluding that AIA covered business method review begins when the Board institutes a proceeding, not when a petition is filed). For the grounds on which the Board denied review, there was never an *inter partes* review proceeding.

The Board's institution decision simply lays out which grounds are to become part of the *inter partes* review and ultimately part of the Board's final written decision issued under 35 U.S.C. § 318(a). *See St. Jude*, 749 F.3d at 1375-76 ("The statute thus establishes a two-step procedure for *inter partes* review: the Director's decision whether to institute a proceeding, followed (if the proceeding is instituted) by the Board's conduct of the proceeding and decision with respect to patentability."); 77 Fed. Reg. 48680, 48689 ("Any claim or issue not included in the authorization for review is not part of the review."). The unpatentability issues addressed during the *inter partes* review did not include the proposed grounds that were denied by the Board. And since those grounds were never part of the review, they were never part of the Board's final written decision. Accordingly, even if this Court had jurisdiction to review the Board's institution decision, it would be reviewed for compliance with 5 U.S.C. § 706(2)(A); *see Sullivan*, 362 F.3d at 1326 (The Board's actions may only be set aside if they are

27

"arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]") (citing *In re McDaniel*, 293 F.3d 1379, 1382 (Fed. Cir. 2002)).

Far from any abuse of discretion (Br. at 20-21), the Board's decision to not institute on some of the grounds proposed by HP was a reasonable application of the USPTO's regulations governing *inter partes* review. HP petitioned for review on eight different grounds involving seven different prior art publications. A94. First, HP asserted that all claims (claims 1-15) are anticipated under 35 U.S.C. § 102(b) by either (1) HP's SJ5 User's Guide or (2) Cotte. *Id*. In addition, HP asserted that all claims are anticipated under 35 U.S.C. § 102(a) by three HP product documents (pertaining to its ScanJet 4Si Scanner, Laser Jet 3100 Product, and 9100C Digital Sender), and under 35 U.S.C. § 102(e) by another patent (Dow). *Id*. Lastly, HP asserted that some claims are anticipated by the SJ5 Press Release, and the remaining claims are obvious over the Press Release in combination with the SJ5 User's Guide. *Id*.

The Board instituted review on two grounds: (1) anticipation of claims 1-5 by the SJ5 User's Guide, and (2) anticipation of claims 1-15 by Cotte. A21-38. The Board denied the remaining six proposed grounds. A38. The decision to limit the review to two of the eight grounds was consistent with the expediency and efficiency objectives of the AIA and the regulations. And the Board's selection of those two grounds was eminently reasonable. Given the choice

28

between § 102(b) prior art and § 102(a) and § 102(e) prior art, the Board

reasonably selected the § 102(b) art, which constitutes a statutory bar. *In re Katz*,

687 F.2d 450, 454 (CCPA 1982). Furthermore, the Board reasonably chose to

proceed with an anticipation rejection based on a 140-page User Guide rather

than an obviousness rejection additionally based on a 6-page Press Release

concerning the same HP product.

While the Board ultimately found that neither Cotte nor the SJ5 User's

Guide anticipated claim 13 because neither reference met the limitation "list of

available module means" (in element 13.2), HP's petition was utterly devoid of

any detailed obviousness analysis with respect to that limitation. Indeed, HP

failed to point to anything additional in the Press Release demonstrating a

reasonable likelihood that HP would prevail on obviousness grounds over the

combined teachings. HP instead simply pointed to the User's Guide and Press

Release as each showing that the ScanJet 5 scanner anticipates the limitation—by

maintaining a list of devices and applications supported by Microsoft Windows.

A106 [9.2] (The SJ5 User's Guide anticipates because "[t]he ScanJet 5 Utility

maintains lists of destinations and workflows, and is started automatically when

Windows is started.") (incorporated by reference at A109 [13.2]); A152 [9.2]

("[The SJ5 Press Release] anticipates … by operating system support including

Microsoft Windows and communications among devices and applications using

29

standard Windows facilities.") (incorporated by reference at A154 [13.2]).  Thus, the Board very reasonably selected HP's proposed ground based on the more comprehensive SJ5 User's Guide, rather than the abbreviated SJ5 Press Release, in instituting review of the '381 patent.

HP's reliance on the obviousness analysis with respect to element 13.1 (Br. at 29-30) is misplaced—the Board did not find that element to be missing from the prior art.  A85-87.  Thus, there can be no abuse of discretion in failing to consider the obviousness of element 13.1, since the Board found that element to be anticipated by the prior art.  Moreover, HP's explanation of the obviousness of that element was notably sparse.  Through a series of cross-references, HP stated only that it would have been obvious to combine the references because combining elements "would have been merely a '[s]imple substitution of one known element for another to obtain predictable results,' and '[a]pplying a known technique to a known device (method, or product) ready for improvement to yield predictable results.'"  A151 [0.0] (citing MPEP § 2141 III.(D)") (incorporated by reference at A152 [9.1], which is in turn incorporated by reference at A154 [13.1]).  That provided insufficient evidence for the Board to find a reasonable likelihood that HP would prevail on obviousness grounds.  35 U.S.C. § 314(a); *cf. Cuozzo*, 2015 WL 4097949, at *10 (finding obvious to combine references to arrive at claimed feature).

HP further contends that had the Board considered the combination, it would have found claim 13 invalid for obviousness because the SJ5 Press Release contains additional detail that is not included in the SJ5 User's Guide—namely, detail on how the scanner is interfaced with the Windows operating system (supporting Windows 3.1, Windows, 95, Windows NT 3.51, and Windows NT 4.0).  Br. at 12.  But, unsurprisingly, the SJ5 User's Guide provides the very same detail.  A1437-38.  Specifically, the User's Guide indicates that the ScanJet 5 scanner interfaces with and supports Microsoft Windows 3.1, Windows 95, Windows NT 3.51, and Windows 4.0.  *Id.*  Moreover, HP fails to tie the disclosure to a claim limitation, much less to the "list of available module means" limitation in element 13.2, the only limitation the Board found to be missing from the prior art.

The Board's decision to deny institution on obviousness grounds certainly was reasonable, and cannot be considered arbitrary or an abuse of discretion. This is especially so since the Board is never required to institute an *inter partes* review.  *See* 35 U.S.C. § 314(a) (providing that an *inter partes* review may ***not*** be authorized ***unless*** the petition satisfies the requisite standard, rather than requiring institution if the standard is met).  And, the Board has authority to weigh efficiency concerns in determining on which, if any, grounds to institute.  *See* 35 U.S.C. § 316(b) (regulations for inter partes review must take into account

31

"the efficient administration of the Office" and "the ability of the Office to timely complete [instituted] proceedings"); 37 C.F.R. § 42.1(b) ("This part shall be construed to secure the just, speedy, and inexpensive resolution of every proceeding."). As the USPTO's rules make clear, the Board has discretion to institute an *inter partes* review based on some or all grounds proposed in a petition. 37 C.F.R. § 42.108(a). Ultimately, whether to proceed with any particular ground of unpatentability proposed in a petition is committed to the Board's discretion. At bottom, a Board's decision to streamline the proceeding is fully consistent with the statutory scheme governing *inter partes* review, and is reasonable.

Even if HP is correct that the Board erred in denying one or more of the proposed grounds as redundant, HP was in the best position to come forward and provide evidence showing how those grounds differed from the grounds on which the Board did institute review. HP had an avenue to do just that: make a request for rehearing of the Board's decision denying institution on certain grounds. *See* 37 C.F.R. §§ 42.71(c), (d); *see also* 77 Fed. Reg. 48680, 48703 (response to comment 65) ("Pursuant to § 42.71, a petitioner may . . . request a rehearing of a decision to institute a review that denies a ground of unpatentability . . . ."). HP cannot cry foul now, at the culmination of the *inter partes* review and after the

final written decision, when HP had the opportunity to request rehearing, but failed to exercise it, at the time of institution.

In essence, HP is asking that the Board be required to institute on any and all proposed alternative grounds of unpatentability, or to re-consider the other grounds if the final written decision determines that the petitioner did not establish unpatentability under any of the instituted grounds. Either would require the Board to significantly increase its workload, as every petitioner would be encouraged to include multiple backup proposed grounds of unpatentability. But such a practice would conflict with the legislative intent of completing *inter partes* reviews in a timely manner. *See* 35 U.S.C. § 316(b); *see also* 157 Cong. Rec. S1377 (daily ed. Mar. 8, 2011) (observing that "it is better that the [USPTO] turn away some petitions that otherwise satisfy the threshold for instituting an inter partes . . . review than it is to allow the [USPTO] to develop a backlog of instituted reviews that precludes the [USPTO] from timely completing all proceedings").

## D.    HP Is Not Estopped From Arguing the Denied Grounds of Unpatentability in District Court

HP is concerned that it may be estopped from asserting grounds in district court that were denied by the Board in the institution decision, or that a challenger may be able to argue that the claims were finally disposed of on those proposed

grounds.  Br. at 36-37, 39.  However, those concerns are unfounded.  Under the AIA statutory scheme, estoppel does not prevent HP from asserting in district court any of the proposed grounds that were denied by the Board and therefore were not part of the *inter partes* review.  Under the statute, estoppel applies for "any ground that the petitioner raised or reasonably could have raised ***during that inter partes review***."  35 U.S.C. § 315 (e) (emphasis added).  Here, when the Board instituted an *inter partes* review on some of HP's proposed grounds and denied institution on other proposed grounds, the denied grounds never became part of the *inter partes* review.  37 C.F.R. § 42.108(b) ("Denial of a ground is a Board decision not to institute *inter partes* review on that ground."); *see also* 77 Fed. Reg. 48680, 48689 ("Any claim or issue not included in the authorization for review is not part of the review.").  Since the denied grounds were never part of the *inter partes* review, estoppel under 35 U.S.C. § 315(e) does not apply against HP with respect to those grounds.  *Cf. Intellectual Ventures*, 781 F.3d at 1375-77 (district court stay provision for AIA covered business method review not triggered until proceeding is ordered).  Likewise, a challenger could not assert that the denied grounds were finally disposed of by the Board.

In other words, since the Board explicitly declined to involve the particular grounds in the *inter partes* review, HP could not have "raised" them during the instituted review.  Nor were the grounds ones which HP "reasonably could have

raised." HP therefore is not estopped under 35 U.S.C. § 315(e) from asserting the denied grounds in another petition or another venue, e.g., in district court. Nor could a challenger succeed in preventing HP from asserting those grounds. HP can still have its day in court—or possibly in another *inter partes* review—to raise the non-instituted grounds of unpatentability.

HP protests that recently, in another *inter partes* proceeding, the Board denied institution on a ground that HP had not, but could have, raised in a prior petition. Br. at 39. However, the Board's decision in another proceeding is irrelevant to this appeal. *In re Watts*, 354 F.3d 1362, 1367 (Fed. Cir. 2004) (This Court's "review of the Board's decision is confined to the 'four corners' of that record."); 35 U.S.C. § 144 (The Federal Circuit shall review the decision "on the record before the Patent and Trademark Office"). Moreover, in that case, the Board declined to institute review on obviousness grounds in the later proceeding over a combination of references the petitioner could have, but did not, propose in an earlier proceeding. *See* IPR2015-00549, Paper No. 10 at 5-6; IPR2013-00635, Paper 19 at 6, 18-23. Here, in contrast, the Board expressly declined to institute review on HP's proposed combination of references, so HP could not raise the combination during the review and hence would not be estopped from proposing it in a later proceeding.

Accordingly, HP is not estopped from raising the obviousness of claim 13

in a subsequent court or Board proceeding, and a challenger cannot assert that the

nonobviousness of claim 13 was resolved by the Board in this proceeding.

## V.    CONCLUSION

This Court lacks jurisdiction to review the Board's decision not to institute

*inter partes* review on alternative grounds proposed in HP's petition.

Alternatively, the Board's decision not to institute review on the proposed

obviousness ground was not an abuse of discretion.

Respectfully submitted,

July 13, 2015

/s/ Amy J. Nelson
_____
THOMAS W. KRAUSE
Acting Solicitor

SCOTT C. WEIDENFELLER
Acting Deputy Solicitor

AMY J. NELSON
JOSEPH G. PICCOLO
Associate Solicitors

U.S. Patent and Trademark Office
Mail Stop 8, P.O. Box 1450
Alexandria, Virginia 22313

*Attorneys for the Director of the*
*United States Patent and Trademark Office*

36

## <u>RULE 32(a)(7)(C) CERTIFICATE OF COMPLIANCE</u>

I certify pursuant to Fed. R. App. Proc. 32(a)(7) that the foregoing BRIEF

FOR INTERVENOR—DIRECTOR OF THE UNITED STATES PATENT AND

TRADEMARK OFFICE complies with the type-volume limitation required by the

Court's rule.  The total number of words in the foregoing brief, excluding the table

of contents and the table of authorities, is 8,434 words as calculated using the

Word® software program.

        /s/ Amy J. Nelson
        _____
        Amy J. Nelson
        Associate Solicitor
        U.S. Patent and Trademark Office

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 13, 2015, the foregoing BRIEF FOR

INTERVENOR—DIRECTOR OF THE UNITED STATES PATENT AND

TRADEMARK OFFICE was electronically filed using the Court's CM/ECF

filing system, which constitutes service, pursuant to Fed. R. App. P. 25 and Fed.

Cir. R. 25(a) and 25(b) and the Court's Administrative Order Regarding

Electronic Case Filing 6(A) (May 17, 2012), to all registered CM/ECF users.


_____
  /s/ Amy J. Nelson
Amy J. Nelson
Associate Solicitor
U.S. Patent and Trademark Office